UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARIENE CADENA, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>CUSTOMER CONNEXX LLC and JANONE INC.,<br><br>    Defendants | Case No.: 2:18-cv-00233-APG-DJA<br><br>**Order**<br><br>[ECF Nos. 77, 78, 79, 80, 91] |

Plaintiffs Cariene Cadena and Andrew Gonzales were hourly employees working at a call center for defendant Customer Connexx LLC (CC). CC is a wholly owned subsidiary of defendant JanOne Inc. The plaintiffs sue on behalf of themselves and similarly situated employees under the Fair Labor Standards Act (FLSA) and Nevada law, claiming they were not paid for all time worked. Specifically, they contend that they were not paid for time spent booting up their computers before clocking into a timekeeping program at the beginning of their shifts and for time spent powering down the computers after clocking out of the timekeeping program at the end of their shifts. They contend that the failure to account and pay for this time resulted in overtime violations under the FLSA. They also assert state law violations for the failure to pay for all hours worked, minimum wages and overtime, and timely payment of wages due and owing upon termination. Finally, they assert a breach of contract claim for failure to pay for all work performed.

This case was initiated in state court by former named plaintiff Danielle Curley. ECF No. 1-1. The defendants removed the case to this court. ECF No. 1. The plaintiffs thereafter amended the complaint to substitute Cadena and Gonzales as named plaintiffs because Curley

had become unresponsive. ECF Nos. 32, 46.  The plaintiffs amended a second time to substitute original defendant ARCA, Inc. with JanOne. ECF Nos. 72, 86.

The FLSA collective action was conditionally certified and notice was sent to putative collective action members. ECF Nos. 28, 30.  Thereafter, consents to join the suit were filed by Amber Miller, Donna Alford, Marguerite Sigmon, Ariel Wilcox, Brandon Cadena, Clarrissa Dix, Nathan Schavers, Krystal Paynther, Kevin Kinyon, Judith Cummings, Kenya Mills, Dawn Pratt, Steve Somodi, Rossalind Saxton, Thomas Johnson, Diana Giraldo, Richard Ortiz, Mary Smith, and Danielle Curley. ECF Nos. 35, 43, 49.  Ariel Wilcox subsequently withdrew her consent. ECF No. 61.  The claims of Thomas Johnson, Amber Miller, and Mary Smith were dismissed because they failed to respond to discovery. ECF No. 71.

Several motions are pending.  The plaintiffs move to certify a class under Federal Rule of Civil Procedure 23 for the state law wage and overtime claims. ECF No. 77.  CC moves to decertify the conditionally certified FLSA collective action and for summary judgment on the merits. ECF Nos. 78, 80.  JanOne (formerly ARCA, Inc.) joins CC's summary judgment motion and separately moves for summary judgment on the issue of whether it is the plaintiffs' employer. ECF No. 79.  Both defendants move to strike the declaration and reports of the expert that the plaintiffs filed in support of their motion for class certification. ECF No. 91.

The parties are familiar with the facts, so I repeat them here only where necessary to resolve the motions.  I deny the defendants' motion to decertify the FLSA collective action because the plaintiffs are similarly situated in a way that is material to their FLSA claims.  I grant CC's summary judgment motion on the FLSA claims, which JanOne joins, because the time spent logging on and off a computer are non-compensable preliminary and postliminary activities.  Because I grant summary judgment in favor of JanOne based on CC's motion, I deny

as moot JanOne's separate motion for summary judgment.  I decline to exercise supplemental jurisdiction over the remaining state law claims because I have resolved the only federal claims in the case and because the state law claims raise novel issues of state law best addressed by Nevada courts.  Because I decline supplemental jurisdiction and remand those claims to state court, I deny without prejudice the motions to certify and to strike.

**I. ROUNDING**

Across various motions, the parties dispute whether the plaintiffs have asserted an FLSA claim based on CC's policy of rounding its employees' time to the nearest quarter hour.  The defendants contend that there are no rounding allegations in the second amended complaint, so there is no rounding claim in this case.  The plaintiffs argue that rounding is no different than a claim for unpaid wages or off the clock work, so the defendants had fair notice of the claim.  They also argue rounding was discussed during discovery, so the defendants are not prejudiced.  Finally, they contend that if rounding must be pleaded, then they should be allowed to amend.  The defendants respond that rounding is not the same as off the clock work because rounding involves time that is captured by the timekeeping system but is adjusted by rounding, whereas off the clock work is work that is not captured by the timekeeping system.  Thus, the defendants contend that alleging off the clock work does not provide fair notice of a rounding claim.

An employer's use of a rounding policy is not a per se violation of the FLSA.  The Department of Labor (DOL) offered the following guidance on the legality of rounding:

> "Rounding" practices.  It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result,

over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b).  Thus, "an employer's rounding practices comply with [the DOL rounding regulation] if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011) (quotation omitted) (collecting cases).  But "an employer's rounding policy violates the DOL rounding regulation if it systematically undercompensate[s] employees, such as where the defendant's rounding policy encompasses only rounding down." *See's Candy Shops, Inc. v. Super. Ct.*, 148 Cal. Rptr. 3d 690, 700 (Cal. Ct. App. 2012) (quotations and internal citation omitted).  Consequently, to plausibly allege an FLSA claim based on a rounding policy, a plaintiff must "allege what the rounding policy is" and "must allege sufficient facts that would plausibly suggest that the rounding policy, whether on its own or in combination with other policies, lead to a systematic underpayment of wages." *Mendez v. H.J. Heinz Co., L.P.*, No. CV125652GHKDTBX, 2012 WL 12888526, at *2 (C.D. Cal. Nov. 13, 2012) (quotation omitted).[1]

### A.  Fair Notice

The second amended complaint contains no allegations that a rounding policy existed, much less what the policy was or facts suggesting that either alone or in combination with other policies the rounding resulted in the systematic underpayment of wages.  No prior iteration of the

---

[1] *See, e.g.*, *Austin v. Amazon.Com, Inc.*, No. C09-1679JLR, 2010 WL 1875811, at *2-3 (W.D. Wash. May 10, 2010) (finding the plaintiff plausibly alleged an FLSA violation due to the employer's rounding policy because the plaintiff alleged how the employer gained an advantage through the combination of its rounding with its attendance and discipline polices); *Harding v. Time Warner, Inc.*, No. 09CV1212-WQH-WMC, 2009 WL 2575898, at *4 (S.D. Cal. Aug. 18, 2009) (holding the plaintiff failed to plausibly allege a violation by merely alleging the employer had a rounding policy).

complaint contained any such facts either.  Thus, the second amended complaint did not put the defendants on fair notice that a rounding claim was at issue in this case. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (stating that Federal Rule of Civil Procedure 8(a) requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quotation omitted)).

I disagree with the plaintiffs' contention that alleging pre- and post-shift off the clock work put the defendants on notice of a rounding claim.  The plaintiffs' allegations involve time spent performing activities prior to clocking into the employer's timekeeping system and end-of-shift activities after clocking out.  That is different than claiming the employer is adjusting time spent on the clock by rounding the recorded time to the nearest quarter hour. *See Hinterberger v. Cath. Health Sys.*, 299 F.R.D. 22, 52-53 (W.D.N.Y. 2014) (concluding a complaint alleging nonpayment for preliminary and postliminary activities did not give fair notice of a rounding claim because a rounding claim "arises, if at all, from rounding the clocked times at which employees start and stop their principal activities" (internal quotation marks omitted)).  The second amended complaint thus did not give fair notice of a rounding claim.

**B. Amendment**

The plaintiffs suggest that if the second amended complaint did not give fair notice that they were asserting a rounding claim, then the proper remedy is amendment.[2]  The deadline to amend the pleadings expired on January 2, 2019. ECF No. 59 at 2.  Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings,

---

[2] The plaintiffs have not actually filed a motion to amend nor provided a proposed amended complaint. *See* LR 15-1(a) ("Unless the court orders otherwise, the moving party must attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading.").

the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (quotation omitted)).

Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment. *Coleman*, 232 F.3d at 1295. Prejudice has been found where the plaintiff moved to amend late in the proceedings, thereby requiring the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted). Whether to modify the scheduling order's amendment deadline lies within my discretion. *Dang*, 488 F.3d at 1142-43.

I deny leave to amend because the plaintiffs have not shown good cause to extend the deadline. Because the plaintiffs contend all employees were subject to the rounding policy, they knew about the facts supporting this theory from the inception of this case. But they did not include those allegations in any of the complaints they filed. The plaintiffs moved to amend after the deadline expired to add JanOne as a defendant. That motion was filed approximately

two weeks before the plaintiffs first raised rounding in their motion to certify under Rule 23. *See* ECF Nos. 72; 77. The plaintiffs thus had discovery related to the rounding policy, in addition to their own personal knowledge, but they still did not seek leave to amend to assert a rounding violation even though they were moving to amend to add JanOne. I therefore deny amendment because the plaintiffs were not diligent. Additionally, amendment would prejudice the defendants because they would have to reopen discovery to explore whether, factually, the rounding policy in combination with other policies operated neutrally. Accordingly, there is no rounding claim in this case.

## II. MOTION TO DECERTIFY FLSA COLLECTIVE ACTION (ECF No. 80)

CC argues that the FLSA collective action should be decertified because the plaintiffs' testimony has shown that, to the extent they worked off the clock, their circumstances were individualized and thus not suitable for collective adjudication. Specifically, CC contends that the plaintiffs testified there was a policy of no off the clock work and those who nevertheless worked off the clock were outliers. They also contend that the plaintiffs' experiences regarding how much time it took to log on and off varied greatly, as did the plaintiffs' use of methods to correct their time, such that collective treatment is inappropriate. They argue that the plaintiffs have other individualized issues, including the fact that some were supervisors responsible for enforcing the timekeeping policies, some worked less than 40 hours a week and so would not have incurred an overtime wage loss even if the plaintiffs' allegations are true, and some have credibility issues due to inconsistencies between their declarations and deposition testimony. The plaintiffs respond that they are similarly situated because they were all required to use a computer to track their time, they must turn on the computer to do so, and they were required to log off of the computer at the end of their shifts.

Certification of a collective action under the FLSA is a two-step process. *See Campbell v. City of L.A.*, 903 F.3d 1090, 1101-02, 1110 (9th Cir. 2018). Preliminary certification under the FLSA is not class certification by the traditional understanding of the term, as it "does not 'produce a class with an independent legal status[] or join additional parties to the action.'" *Id.* at 1101 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* (quoting *Genesis Healthcare*, 569 U.S. at 75).

Later, generally "at or after the close of relevant discovery," the defendant may initiate the second step of the certification process by moving for "decertification." *Id.* at 1109. "If the motion for decertification is granted, the result is a negative adjudication of the party plaintiffs' right to proceed in a collective as that collective was defined in the complaint. The opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone." *Id.* at 1110. "If the motion for decertification is denied, the collective proceeds toward trial, at least on the questions justifying collective treatment." *Id.*

In both certification steps, the key inquiry is whether the putative opt-in plaintiffs are "similarly situated" to the named plaintiff. 29 U.S.C. § 216(b). "[W]hat similarly situated means [] is, in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some material aspect of their litigation." *Campbell*, 903 F.3d at 1114 (emphasis omitted). "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (emphasis omitted).

The burden on the plaintiffs in the first step is light, and is "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* at 1109. But at the decertification stage, I take "a more exacting look at the plaintiffs' allegations and the record" and employ a summary judgment standard. *Id.* at 1109, 1117. I ask whether a genuine dispute remains as to whether the plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. I may decertify "where conditions make the collective mechanism truly infeasible," but I may not decertify based on a perception that proceeding collectively will likely be inconvenient. *Id.*

I deny the defendants' motion to decertify because the plaintiffs have presented evidence of a company-wide policy of requiring employees to engage in some way with their computers to open the timekeeping program before clocking in. The employees must do so because CC maintained its timekeeping program on the computer. The question of whether that time is compensable under the FLSA is a question that can be resolved on a collective basis, as demonstrated by CC's summary judgment motion. By and large, CC does not make individualized arguments about why the plaintiffs' FLSA claims fail. Rather, CC argues the boot up and shut down times are not compensable under the Portal-to-Portal Act or that the time is *de minimis*. ECF No. 78 at 19-29. It alternatively contends that it did not and could not have known that employees were working overtime because it had a mechanism for employees to adjust their time. *Id.* at 29-30. The fact that the amount of time each employee spent on the boot up and shut down activities varied does not counsel in favor of decertification. *Campbell*, 903 F.3d at 1116 ("A systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees."). I thus decline to decertify the collective action.

## III. CC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 78)

CC moves for summary judgment on the plaintiffs' FLSA claims because the time spent booting up and logging off the computer are not compensable preliminary and postliminary activities under the FLSA and the Portal-to-Portal Act. CC also argues that the FLSA and Nevada wage claims fail because the time booting up and shutting down is *de minimis* and because the defendants did not know about the alleged overtime if employees did not avail themselves of the means to correct inaccuracies in their time. CC contends the breach of contract claim fails because the plaintiffs were at-will employees with no employment contract.[3]

The plaintiffs respond that because logging into the computer is integral and necessary to perform their work at the call center, they must be compensated for the time it took to perform these tasks. They also contend that the lost time is not *de minimis*. And they argue that for the Nevada wage claims, Nevada does not recognize the *de minimis* doctrine and would not follow the Portal-to-Portal Act. As for the breach of contract claim, the plaintiffs argue they entered into a contract with the defendants for the plaintiffs to perform work in exchange for the defendants paying the agreed hourly rate for all hours worked.

/ / / /

/ / / /

---

[3] CC also asserts two arguments specific to individual plaintiffs. CC contends that Cummings and Brandon Cadena are not due overtime because they worked less than 40 hours a week, so their FLSA claim for unpaid overtime fails. CC also asserts that Kinyon should be judicially estopped from pursuing his claims because he failed to disclose them in his bankruptcy. The plaintiffs concede that if Cummings and Brandon Cadena did not exceed 40 hours after considering any unpaid time, then they have no FLSA claim. ECF No. 103 at 36. But they argue that Nevada would treat these plaintiffs' claims differently, so they still have state law claims. They contend Kinyon should not be judicially estopped because he did not opt into this action until after his bankruptcy was discharged and he is a layperson who would not have understood he had a wage and hour claim prior to receiving the notice of this action.

10

### A. FLSA Claims

CC had a policy of prohibiting off the clock work and it communicated that policy to its employees.[4] Employees were directed to log into the timekeeping system on the computer as their first task before logging into other programs needed to perform their work, and to close out all other programs before logging out of the timekeeping system at the end of their shifts.[5] Employees were able to access CC's building up to 30 minutes before their start time and they would badge in and out of the building. ECF Nos. 90-12 at 5; 103-15 at 9. Their pay was calculated off the time recorded in the timekeeping system on the computer, not the time from badge swipes in and out of the building.

The plaintiffs testified to varying times as to how long it took them to log into the timekeeping system at the beginning of their shifts, with times ranging anywhere from a few seconds to 20 minutes.[6] A number of factors influenced the amount of time it took to log in, but

---

[4] *See, e.g.*, ECF Nos. 78-2 at 18; 78-3 at 5-6; 78-4 at 12; 78-7 at 6-7; 78-8 at 20-23.

[5] ECF Nos. 78-2 at 15, 21; 78-4 at 15-16, 19-20; 78-5 at 23; 78-7 at 6; 78-11 at 13; 78-13 at 5, 7; 78-16 at 19; 78-19 at 4, 7; 90-12 at 3.

[6] ECF Nos. 78-2 at 11-12 (Curley testifying it regularly took 10 minutes to turn on); 78-3 at 12 (Cummings estimating it took five to 14 minutes for computer to turn on and five minutes to load the timekeeping program); 78-4 at 16-20 (Alford testifying that if the computer was already on it would turn on instantly, if it was in sleep mode it would take two to three minutes, and if it was off it would take longer); 78-5 at 19 (Schavers estimating it took three minutes to boot up, sometimes longer if he needed to restart the computer); 78-12 at 3 (Giraldo testifying the boot up time varied from right away to up to 10 minutes); 78-13 at 8-11 (Saxton testifying that sometimes she could clock in within seconds, other times it took three to five minutes); 78-15 at 6 (Brandon Cadena testifying the computer usually booted up in 30 seconds to one minute); 78-16 at 15-17 (Gonzales testifying that it took anywhere from a minute to 15 minutes to boot up); 78-17 at 9-10 (Ortiz testifying it took two or three minutes); ECF No. 78-19 at 3-6 (Sigmon estimating one to two minutes from powering on to clocking in); 103-13 at 3 (Somodi testifying login could be momentarily or up to ten minutes); 103-18 at 3 (Schavers testifying it took on average 10 to 15 minutes, sometimes 20 minutes).

mostly it related to whether the computer was already on, was in sleep mode, or was turned off.[7] Whether the computer was an older model also impacted log-in times. ECF Nos. 78-18 at 15; 90-5 at 5, 8-9; 103-17 at 3.

Log-out times similarly varied, with most plaintiffs testifying that it took only a few seconds.[8] Some plaintiffs testified that they waited for the computer to completely power down before leaving, so that took a bit longer. ECF Nos. 78-5 at 24; 78-12 at 10; 78-13 at 8.

CC had a means for employees to adjust their time to report off the clock work. Employees would fill out a "punch" form for supervisors to correct their time. *See, e.g.*, ECF Nos. 78-2 at 18-19; 78-10. The plaintiffs testified they were aware of this procedure and many of them used it to report off the clock work when they could not log in quickly.[9] All but one of the plaintiffs who used the punch form testified that their time was adjusted or they did not know if it was adjusted.[10]

---

[7] ECF Nos. 78-3 at 9; 78-4 at 16-20; 78-5 at 15; 78-11 at 3-4, 12; 78-14 at 11-12; 103-14 at 3-4; 103-17 at 3.

[8] *Compare* ECF Nos. 78-2 at 16; 78-3 at 15; 78-4 at 21, 23; 78-5 at 23-24; 78-15 at 9-10; 78-16; 78-17 at 11; 78-19 at 7; 101-4 at 5, *with* ECF Nos. 78-12 at 10 (Giraldo testifying she would shut down her computer and it took up to five minutes); 78-18 at 17 (one to four minutes); 103-7 at 5-6 (Cadena testifying she would shut down her computer and it took two to four minutes on the old computers and half that on the newer ones).

[9] ECF Nos. 78-2 at 3, 10, 14, 18-19; 78-3 at 5, 16; 78-4 at 24, 27; 78-5 at 6-7; 78-11 at 14; 78-12 at 7-8; 78-13 at 14; 78-14 at 8; 78-15 at 12; 78-17 at 6-7.

[10] ECF Nos. 78-2 at 23-24 (Curley testifying she was compensated for time reported on punch forms); 78-3 at 11 (Cummings testifying her time was fixed if she brought it to someone's attention); 78-5 at 12, 26 (Schavers testifying he knew of and used punch forms and was told his time would be adjusted but he did not double check to see if it was done); 78-11 at 14-15 (Dix testifying she knew she could use a punch form and the employer would adjust her time); 78-14 at 16-18 (Mills testifying she used the punch form when the computers were slow to load but she was not sure if her time was actually corrected); 78-15 at 12 (Brandon Cadena testifying his time was corrected if he informed his employer); 78-16 at 4-6, 22 (Gonzales testifying he reported the need to adjust his time but he was not sure if it was done); 103-11 at 12 (Saxton testifying that she used punch forms to adjust her time but did not check to see if time was adjusted). *But see* ECF Nos. 78-20 at 3-4 (Paynther testifying that if she told her employer that her time needed to

The defendants argue that the tasks of starting the computer, logging in and out of the timekeeping system, and turning off the computer are non-compensable preliminary and postliminary activities under the Portal-to-Portal Act. The plaintiffs respond that starting the computer and logging in and out are integral and indispensable parts of their jobs. They contend that they should be paid from the moment they start their first principal activity of the day, which is starting the computer to clock in, until they perform their last principal activity, which is turning off the computer.

The Portal-to-Portal Act excludes from compensation certain preliminary and postliminary activities. Thus, an employer need not pay for time an employee spends on "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and . . . activities which are preliminary to or postliminary to said principal activity or activities," which occur before or after the principal activities. 29 U.S.C. § 254(a). An employee's workday begins with the "first principal activity," and ends with the last. 29 C.F.R. § 790.6(a); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 35 (2005).

An employee's principal activities include "all activities which are an integral and indispensable part of the principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014) (quotation omitted). An activity is integral and indispensable to an employee's principal activities "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* The test is not whether the activity is necessary for the employee to perform his or her principal activity, nor is it based

---

be corrected, it would be adjusted); 90-14 at 6-7 (Paynther testifying it was not always corrected).

on whether the employer requires or benefits from the activity. *Id.* at 36; *IBP, Inc.*, 546 U.S. at 40-41. Instead, the "integral and indispensable test is tied to the productive work that the employee is employed to perform." *Integrity Staffing Sols., Inc.*, 574 U.S. at 36 (emphasis omitted).

Under the FLSA, "the employee has the burden of proving that the employee was not properly compensated for work performed." *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998); *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1054 (9th Cir. 2010). "Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

Starting and turning off computers and clocking in and out of a timekeeping system are not principal activities because CC did not hire its customer service agents to turn computers on and off or to clock in and out of a timekeeping system. It hired them to answer customer phone calls and perform scheduling tasks. The tasks also are not integral and indispensable to the employees' duties as call center customer service agents. A call center agent does not have to log out of a computer to answer customer phone calls. And turning on or otherwise engaging with a computer and loading a timekeeping program to clock in also are not integral and indispensable to the employees' duties. CC could dispense with the electronic timekeeping method and the employees could still perform their work.[11]

CC's employees clocked into the timekeeping program before loading other computer programs that they used to perform their job duties. Thus, the question here is only whether time

---

[11] The FLSA does not require use of a timeclock. 29 C.F.R. § 785.48(a).

spent engaging the computer in some fashion, loading the timekeeping program, and clocking in are compensable tasks. This activity is the electronic equivalent of waiting in line to clock in or out of a physical timeclock, which is non-compensable. *See* 29 C.F.R. § 790.7(g) (stating that "checking in and out and waiting in line to do so" normally are non-compensable preliminary and postliminary activities); *see also Rutti*, 596 F.3d at 1049, 1057 (holding that logging into a handheld device that notified the employee of his jobs for the day, along with other pre-shift activities, was not integral to a car alarm installer's duties); *Jimenez v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, No. 15-2213, 697 F. App'x 597, 599 n.2 (10th Cir. Sept. 4, 2017) (describing pre-shift activities of putting on a headset and logging into a computer as "preliminary, non-compensable tasks" for a 911 dispatcher).

      The plaintiffs rely on a Department of Labor (DOL) fact sheet related to call center employees. DOL Fact Sheet #64 states that an "example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." ECF No. 103-3. But the fact sheet states that it is "for general information and is not to be considered in the same light as official statements of position contained in the regulations." *Id.* Thus, at best for the plaintiffs, the fact sheet is "'entitled to respect' only to the extent it has the 'power to persuade.'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The weight to give the fact sheet "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. The fact sheet does not contain any reasoning, does not indicate that the issue was thoroughly considered, and cites no case law or other authority to support its conclusion. To the

extent the fact sheet suggests that time spent starting a computer to clock in is compensable, that would appear to conflict with the DOL's own regulation that states that time spent checking in and out is not compensable.

Consequently, the plaintiffs' FLSA claims fail as a matter of law because the tasks for which the plaintiffs seek payment are non-compensable preliminary and postliminary activities. I therefore grant summary judgment on the FLSA claims in favor of the defendants.

### B. State Law Claims

I have supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).[12] Under § 1367(c), I may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

If I determine that one or more of these conditions exists, I must then consider whether exercising jurisdiction would ultimately serve "the principles of economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 3357 (1988). If these considerations do not favor exercising supplemental jurisdiction, then "[I] should hesitate to exercise jurisdiction over [the] state claims . . . ." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

---

[12] According to the amended complaint and the defendants' answer, there is not complete diversity between the plaintiffs and defendants. *See* ECF Nos. 86 at 2-3 (stating the named plaintiffs are Nevada residents); 88 at 3 (admitting JanOne is a "Domestic Corporation").

Two bases exist for me to deny supplemental jurisdiction. First, I have resolved the FLSA claims over which I had original jurisdiction. Second, the plaintiffs' state law claims raise complex and unresolved issues of state law that are best determined by the Nevada courts, such that comity considerations weigh against exercising jurisdiction over the state law claims. For example, the parties dispute in their summary judgment briefing whether Nevada would recognize the *de minimis* rule and whether it would follow the Portal-to-Portal Act. Although the parties have conducted substantial discovery in this case, the plaintiffs have only just now moved for class certification for the state law claims in accordance with the scheduling order. *See* ECF No. 69. I have made no significant rulings on the state law claims. Thus, judicial economy, procedural convenience, and fairness to the parties do not counsel in favor of retaining jurisdiction. Whether and to what extent Nevada would follow the Portal-to-Portal Act, and whether it would recognize the *de minimis* rule and, if so, what factors it would consider in applying the rule are questions best addressed in the first instance by a Nevada court, with appeal to the Supreme Court of Nevada. I therefore decline supplemental jurisdiction over the state law claims. Because I decline to exercise supplemental jurisdiction over these claims, I deny as moot the plaintiffs' motion to certify a class under Rule 23 for the state law claims and the defendants' related motion to strike.

## IV.  CONCLUSION

I THEREFORE ORDER that defendant Customer Connexx LLC's motion to decertify **(ECF No. 80) is DENIED**.

I FURTHER ORDER that defendant Customer Connexx LLC's motion for summary judgment **(ECF No. 78)** and defendant JanOne Inc.'s joinder **(ECF No. 79) are GRANTED in part as to the plaintiffs' claims under the Fair Labor Standards Act**.

I FURTHER ORDER that the plaintiffs' motion to certify a class **(ECF No. 77)**, defendant JanOne's separate motion for summary judgment **(ECF No. 79)**, and the defendants' motion to strike **(ECF No. 91) are DENIED as moot**, without prejudice to raise those issues in the state court proceedings.

I FURTHER ORDER that the plaintiffs' state law claims are **REMANDED** to the state court from which this case was removed for all further proceedings. The clerk of the court is instructed to close this case.

DATED this 21st day of July, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE