**FILED**

OCT 24 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARIENE CADENA; ANDREW GONZALES, on behalf of themselves and all others similarly situated, | No. 21-16522 |
| Plaintiffs-Appellants, | D.C. No. 2:18-cv-00233-APG-DJA |
| v. | OPINION |
| CUSTOMER CONNEXX LLC; JANONE, INC.; DOES, 1 through 50, inclusive, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted June 14, 2022
San Francisco, California

Before: Jay S. Bybee, Consuelo M. Callahan, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Labor Law

The panel reversed the district court's summary judgment in favor of defendant Customer Connexx LLC and remanded for further proceedings in a collective action brought under the Fair Labor Standards Act by call center workers.

The workers provided customer service and scheduling to customers over a "soft phone," operated only through their employer-provided computers. They alleged that their time booting up and shutting down their computers was an integral and indispensable part of their principal duties, making the time compensable under the FLSA, as amended by the Portal-to-Portal Act.

The panel concluded that the district court correctly identified the workers' principal duties as answering customer phone calls and scheduling appliance pickups. Agreeing with the Tenth Circuit, the panel held that the workers' duties could not be performed without turning on and booting up their work computers, and having a functioning computer was necessary before the workers could receive calls and schedule appointments. Accordingly, turning on the computers was integral and indispensable to the workers' duties and was a principal activity under the FLSA. It therefore was compensable.

The panel reversed the district court's summary judgment on the FLSA claim and remanded to the district court for consideration of whether time spent shutting down computers was compensable, whether the time spent booting up and down the computers was not compensable under the *de minimis* doctrine, and whether Connexx had no knowledge of the alleged overtime such that it was not in violation of the FLSA's overtime requirements.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Joshua D. Buck (argued), Mark R. Thierman, and Leah L. Jones, Thierman Buck LLP, Reno, Nevada, for Plaintiffs-Appellants.

Veronica T. Hunter (argued) and Paul T. Trimmer, Jackson Lewis PC, Las Vegas, Nevada, for Defendants-Appellees.

Frances Y. Ma (argued), Attorney; Rachel Goldberg, Counsel for Appellate Litigation; Jennifer S. Brand, Associate Solicitor; Seema Nanda, Solicitor of Labor; United States Department of Labor, Office of the Solicitor, Washington, D.C.; for Amicus Curiae Secretary of Labor.

BYBEE, Circuit Judge:

Plaintiffs-Appellants Cariene Cadena and similarly situated employees (Appellants) are employed by Customer Connexx LLC (Connexx) to operate a call center in Las Vegas, Nevada.  Appellants' primary responsibilities are to provide customer service and scheduling to customers over a "soft phone," operated only through their employer-provided computers.  We are asked to determine whether their time booting up and shutting down their computers is an integral and indispensable part of their principal duties, making the time compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19.  The district court granted summary judgment for Connexx.  We reverse and remand for further proceedings.[1]

## I.    BACKGROUND

Connexx, a wholly owned subsidiary of JanOne Inc., operates a call center in Las Vegas, Nevada that provides customer service and scheduling for an appliance recycling business.  Appellants work in-person at the call center in a variety of hourly-paid, non-exempt positions, including as call center agents whose primary responsibilities are to provide customer service and scheduling functions

---

[1] Our holding is limited to the facts presented in this case—that is, Appellants using employer-provided computers to perform their duties while working at a central work site.  We are not asked to consider, and offer no opinion on, whether the same time would be compensable under the FLSA if Appellants worked remotely or used their personal computers to perform these duties.

for customers over the phone.[2]  Like many employers, Connexx has a policy prohibiting "off the clock" work and requires hourly employees to record their actual hours worked each day.  Employees clock in and out using a computer-based timekeeping program, which they must do before accessing other job-relevant programs.  To reach the timekeeping program, employees must awaken or turn on their computers, log in using a username and password, and open up the timekeeping system.  Appellants are not assigned to a particular computer and they testified that, depending on the age of the computer and whether the computer was off or in sleep mode, it would take anywhere from a minute to twenty minutes for the computer to boot-up so they could clock in.  Appellants estimate the average boot up time is between 6.8 to 12.1 minutes.  Connexx allows employees to correct inaccuracies in their timecards that occur due to technical issues using a "punch claim form."

Once clocked in, Appellants load various programs and scripts and confirm that their phone is connected and ready to accept calls.  Connexx agents use a phone program called "Five9," an application that operates through employees'

---

[2] Appellants include the two named plaintiffs, Cariene Cadena and Andrew Gonzales, and fifteen opt-in plaintiffs who, after receiving notice of the conditionally certified FLSA collective action, executed consent forms to join the collective action.

computers rather than through a physical phone.  At the end of their shift, employees wrap up any calls they are on, close out of job-relevant programs, clock out, and then log off or shut down their computers.[3]  Connexx employees gave varied accounts of how long it took to log off of their computers, ranging from less than a minute to fifteen minutes, and Appellants estimate it took an average of 4.75 to 7.75 minutes to log off and boot down the computers.

Appellants filed suit in Nevada state court on behalf of themselves and similarly situated employees alleging violations of the overtime provisions of the FLSA and Nevada law.  They contend that they were not paid for the time spent booting up their computers prior to clocking in to the electronic timekeeping system or closing down their computers after clocking out of the timekeeping program.  Defendants removed the case to federal court.

The district court conditionally certified the FLSA collective action and notice was sent to putative collective action members, resulting in fifteen opt-in

---

[3] Appellants allege that employees were instructed "to make sure that [their] computer[s] [are] completely shut down."  Connexx claims that employees were never instructed to turn off their computers and presented testimony from various employees that it was a personal preference to shut their computer down all the way and that most people would leave after logging out without waiting for the computer to shut down.  However, other employees testified that they were advised or instructed to shut down their computers all the way.  Because Connexx filed for summary judgment, we will assume for purposes of this appeal that employees were instructed to shut down their computers at the end of their shift.

4

plaintiffs currently in the suit.  Connexx moved to decertify the FLSA collective

action and for summary judgment on the FLSA claim.  The district court granted

summary judgment to Defendants, holding that "[s]tarting and turning off

computers and clocking in and out of a timekeeping system are not principal

activities" because Connexx did not hire employees for that purpose, but "to

answer customer phone calls and perform scheduling tasks."  The district court

noted that Connexx "could dispense with the electronic timekeeping method and

the employees could still perform their work."  The court compared booting up to

"the electronic equivalent of waiting in line to clock in or out of a physical

timeclock, which is non-compensable."  The court concluded that those tasks "are

not integral and indispensable to the employees' duties as call center customer

service agents."  Having disposed of the FLSA claim, the district court declined to

exercise supplemental jurisdiction and remanded the state law claims to state court.

 The district court denied Appellants' motion for reconsideration.

Appellants timely filed a notice of appeal.  The United States Department of

Labor (DOL) filed an amicus brief in support of Appellants.

## II.   STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.  We "review a district court's

grant of summary judgment *de novo*, and may affirm on any basis supported by the

record." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) (citing *Burrell v. McIlroy*, 464 F.3d 853, 855 (9th Cir. 2006)). "Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56." *Id.* (citing *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999)). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)).

"Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004). "The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Id.*

## III.   DISCUSSION

Appellants have raised a single issue for our review:  Whether Appellants' time spent booting up and shutting down their computers, through which they access their phone and customer service programs, is an integral and indispensable part of their duties and thus compensable under the FLSA.  We will begin with important background on the FLSA, including the Portal-to-Portal Act, which

amended the FLSA; DOL regulations; and the relevant jurisprudence.  We will then apply those standards to Connexx's call center employees.

A.    *The Fair Labor Standards Act*

Enacted in 1938, the FLSA requires employers to pay employees one and one-half times their regular pay for any time worked over forty hours per workweek.  29 U.S.C. § 207.  In 1946, the Supreme Court held that "the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946).  The Court's interpretation in *Mt. Clemens* extended to preliminary activities like "walking to work on the employer's premises," "putting on aprons and overalls," and "turning on switches for lights and machinery."  *Id.* at 691–93.

In response, in 1947 Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251–62, to correct the "unexpected liabilities" created by the FLSA being "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees."  *Id.* § 251(a).  The Act provided that

> no employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities . . .—

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Id.* § 254(a).

In the wake of the Portal-to-Portal Act, the Supreme Court revised its prior understanding of the FLSA and held that "activities performed either before or after the regular work shift . . . are compensable . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). Activities that are "integral and indispensable" are themselves treated as "principal activities" under the Portal-to-Portal Act. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). The first principal activity of the day begins the workday and "any [waiting] time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA." *Id.*; *see* 29 C.F.R. § 790.8(a) (interpreting "'principal' activities" as the activities an employee is "employed to perform"); *id.* § 790.7(b) ("'preliminary activity'

mean[s] an activity engaged in by an employee before the commencement of his 'principal' activity or activities"). The Portal-to-Portal Act did not change earlier interpretations of the term "work," *see IBP*, 546 U.S. at 28, which the Court defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business," *Tennessee Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944); *see* 29 C.F.R. § 790.6(b) (defining "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities[,] . . . includ[ing] all time within that period whether or not the employee engages in work throughout all of that period").

The "integral and indispensable test is tied to the productive work that the employee is *employed to perform*" and does not include all activities an employer requires. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014). "An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 33. Applying these standards, the Court has held that preparation of equipment necessary to perform principal activities is compensable. *See*

*Steiner*, 350 U.S. at 256 (time spent changing clothes at beginning of a shift and showering after at a battery factory was indispensable because workers were exposed to toxic dust); *Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (pre-shift knife sharpening was integral and indispensable to the jobs of "knifemen" employed to butcher animals at a meatpacking plant); *see also* 29 C.F.R. § 785.24 (providing examples of tasks that are compensable under the integral and indispensable test). DOL regulations provide other examples of compensable preparatory time. 29 C.F.R. § 790.8(b)(1) (stating that a lathe operator's time spent oiling, greasing, or cleaning his machine, or installing a new cutting tool, is compensable); *id.* § 790.8(b)(2) (stating that a garment worker, who is required to report early to distribute clothing at the work-benches of other employees or get machines ready for operation by others, similarly must be paid for that time).

In contrast, the Court has said that time spent waiting to perform the first principal activity of the day is ordinarily not compensable. *See IBP*, 546 U.S. at 40–42 (holding the time spent waiting to don protective equipment, as the first principal activity of the day, is not compensable); 29 C.F.R. § 785.24 ("[A]ctivities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities."). And in *Integrity*

10

*Staffing Solutions*, the Court found that Amazon warehouse employees who were required to undergo security screening before leaving the warehouse were not entitled to compensation because the screening was not "an intrinsic element" of the job the employees were employed to perform—retrieving products from shelves and packaging them for shipment.  574 U.S. at 29–30, 35.  The Court made clear that the integral and indispensable test does not encompass all activities that are required by the employer.  *Id.* at 36.  But it does encompass those activities that the employee is employed to perform.  *Id.* at 37.

B.    *Whether Booting Up and Down Employees' Computers Is Integral and Indispensable to Their Principal Duties*

To determine whether booting up and down the computers is compensable under the FLSA, we must first identify the employees' principal duties—that is, the work that they are employed to perform.  The parties do not dispute the nature of the employees' duties and the district court correctly identified employees' principal duties as "answer[ing] customer phone calls and perform[ing] scheduling tasks."

The manner in which employees perform these duties is relevant.  Connexx operates a physical call center with numerous computer workstations on a single floor.  Employees are not assigned to any particular computer, so they select a

workstation when they arrive on a "first come, first serve" basis.  Based on whether

the employee who used that computer last shut down the computer or left it in

sleep mode, the employees either fully turn on the computer or wake the computer

from sleep mode.  Employees enter their credentials to log in and then are able to

load the electronic timekeeping program and clock in.  Employees accept customer

calls through the "Five9" program.  Five9 is a "soft phone" which allows

employees to receive customer calls through their computers.  There is no

hardware, other than the computer running the program, needed to accept customer

calls.  Employees also load scripts through the Five9 program that correspond to

the specific utility program for which Connexx is providing scheduling services.

As necessary, employees may also load programs like Microsoft Excel and Office

365.

 The key question is whether turning on and off the computers is integral and

indispensable to the employees' principal activities of receiving customer phone

calls and scheduling appliance pickups.  If it is, turning on the computer itself is a

principal activity, *see IBP*, 546 U.S. at 37 ("[A]ny activity that is 'integral and

indispensable' to a 'principal activity' is itself a 'principal activity' "), and the time

spent waiting for the boot up process is a part of the continuous workday, *see id.*

("[D]uring a continuous workday, any [waiting] time that occurs after the

beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA.").  If turning on the computer is not integral and indispensable, it is outside of the continuous workday and non-compensable.  *See id.*; *see also* 29 C.F.R. § 790.7(b) ("'[P]reliminary activity' mean[s] an activity engaged in by an employee before the commencement of his 'principal' activity or activities . . . .").  Here, the employees' duties cannot be performed without turning on and booting up their work computers, and having a functioning computer is necessary before employees can receive calls and schedule appointments.  Accordingly, turning on the computers is integral and indispensable to the employees' duties and is a principal activity under the FLSA.[4]

The district court concluded that "[s]tarting and turning off computers and clocking in and out of a timekeeping system are not principal activities because [Connexx] did not hire its customer service agents to turn computers on and off or

---

[4] Our analysis and conclusion here is limited to whether booting up the computers is compensable because the task is integral and indispensable to the employees' duties and therefore a principal activity under the FLSA.  Because shutting down the computers is not integral and indispensable to the employees' ability to conduct calls, it is not compensable under this theory.  Time spent shutting down the computers may be compensable if the task is determined to be a principal activity in and of itself.  As previously noted, the parties dispute whether employees were instructed to shut down their computers at the end of their shifts. *See supra* n.2.  We leave to the district court on remand to determine whether shutting down the computers is compensable under any circumstances.

13

to clock in and out of a timekeeping system." In our view, the district court erred in characterizing the inquiry. The district court asked whether "engaging with a computer and loading a timekeeping program to clock in" is integral to the employees' duties. We acknowledge that clocking in may not be integral to the tasks for which the employees were hired and could be accomplished by other means, such as the traditional time clock or a time sheet. We think the correct inquiry is whether engaging the computer, which contains the phone program, scripts, customer information, and email programs, is integral to the employees' duties. That is, we should evaluate the importance of booting up the computer to the employees' primary duties of answering calls and scheduling rather than to their need to clock in using the electronic timekeeping system.

When the employees' duties are understood in this way, the electronic timekeeping system becomes a red herring. It is a convenience to the employer.[5] It has no impact on the "integral and indispensable" analysis except to show us

---

[5] The district court analogized boot up time to waiting in line to clock in. The comparison is not appropriate. If there is an analogy to be made to waiting in line to clock in, it would be the time it takes the computer to pull up the timekeeping program once an employee has booted up the computer. Our holding does not, as Connexx suggests, effectively prohibit employers from using computer timekeeping programs or contradict DOL regulations implying that no specific form of timekeeping is required. *See* 29 C.F.R. § 785.48 ("Time clocks are not required.").

when Connexx began counting the employees' time.  The district court erred by analyzing logging in to a computer in order to clock in to the timekeeping system as one act and then concluding that the employees could perform their work without clocking in.  When framed correctly, the answer to the question—whether booting up the computers is integral and indispensable to the employees' customer service duties—is clear.  All of the employees' principal duties require the use of a functional computer, so turning on or waking up their computers at the beginning of their shifts is integral and indispensable to their principal activities.  Because clocking in to the timekeeping program occurs after booting up the computer—the first principal activity of the day—it is compensable.  *See IBP*, 546 U.S. at 37.

We recognize that not all activities an employer requires as a part of an employee's duties are compensable.  *See Integrity Staffing Sols.*, 574 U.S. at 36 (warning that treating all employer-required activities as integral and indispensable is overbroad).  But when, as here, the required activity bears such a close relationship to the employees' principal duties that employees cannot eliminate the required activity and still perform their principal duties, the activity is compensable.  Unlike in *Integrity Staffing Solutions*, where the employer could do away with security screening without impairing the warehouse employees' ability

to retrieve and package products, Connexx call center employees cannot perform their principal duties without first booting up their computers.

The Tenth Circuit recently reached the same conclusion when faced with a similar claim from call center representatives.  In *Peterson v. Nelnet Diversified Solutions, LLC*, 15 F.4th 1033 (10th Cir. 2021), the employees' principal responsibilities were to "service student loans and interact with debtors over the phone and through email." *Id.* at 1035–36.  Before clocking in to an electronic timekeeping system, each employee had to wake up her work computer, enter her credentials, and load the desktop and the company's intranet system, which contained the link to clock in.  *Id.* at 1036.  The median amount of time spent on boot up was "approximately two minutes per shift." *Id.*  The district court found the time was compensable but concluded that it was *de minimis*.  *Id.*  On appeal, the Tenth Circuit affirmed that the time was compensable but reversed on the applicability of the *de minimis* doctrine, holding that the regularity and absence of administrative difficulty in recording the time made it compensable.  *Id.* at 1049. In so holding, the court found an "obvious connection between the computers and software programs and the work the [call center representatives] are employed to perform" and because "the data and tools necessary to [perform the employees'] principal duties exist on the computer," booting up the computer is integral and

16

indispensable to their duties. *Id.* at 1041–42.  The Tenth Circuit also concluded that "turning on a computer, entering passwords, and launching software is not analogous to waiting in line to punch a clock, particularly when—very much unlike a time clock—the computer itself is an integral tool for the work the individual is employed to perform." *Id.* at 1041.

Connexx argues that *Peterson* is distinguishable because the call center employees there were all required to perform "several preshift tasks before they clocked in" including booting up the computer and loading relevant programs, whereas here, as soon as the computer is turned on, the employees can access the timekeeping system.  Connexx's proffered differences do not hold up.  While the employees in *Peterson* did have to enter their badge or credentials and the company's intranet system was automatically launched before the link to the timekeeping software appeared, *see id.* at 1036, this is not fundamentally different from the process to which Connexx employees have testified.  Connexx employees have to turn on or wake up their computers, enter their login credentials, and wait for their desktop to load, before they can launch their timekeeping software and clock in.

Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their

17

computers at the beginning of their shifts is integral and indispensable and
therefore compensable under the FLSA.

C.   *Alternative Grounds for Affirmance*

Connexx urges us to affirm on two alternative grounds.  First, Connexx
argues that we should affirm because even if the boot up time is not preliminary, it
is non-compensable under the *de minimis* doctrine.  The *de minimis* doctrine is not
codified in the FLSA, but has its origins in the Court's pre-Portal-to-Portal Act
decision in *Mt. Clemens*.  There the Court invoked the ancient principle of *de
minimis non curat lex*—the law does not concern itself with trifles—and stated that
the FLSA "d[id] not . . . preclude the application of a *de minimis* rule" where "the
matter in issue covers only a few seconds or minutes of work beyond the scheduled
working hours." *Id.* at 692 (emphasis added).  We have since recognized the
doctrine in the FLSA context.  *Lindow v. United States*, 738 F.2d 1057, 1062 (9th
Cir. 1984) ("As a general rule, employees cannot recover for otherwise
compensable time if it is *de minimis*."); *see Alvarez v. IBP, Inc.*, 339 F.3d 894,
903–04 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005).  DOL has
recognized the doctrine in its regulations.  *See* 29 C.F.R. § 785.47 ("[I]nsubstantial
or insignificant periods of time beyond the scheduled working hours, which cannot
as a practical administrative matter be precisely recorded for payroll purposes, may

be disregarded."). More recently, however, the Court has questioned the application of the *de minimis* doctrine to the FLSA. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 234 (2014) ("A *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles . . . ."). The district court acknowledged Connexx's argument that the time was *de minimis* but did not reach the issue because it ruled on the preliminary/postliminary ground.

Second, Connexx argues that we can affirm on the alternative basis that Connexx had no actual or constructive knowledge of the alleged overtime. In general, "an employee must be compensated for all hours worked," including "[a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223(a). DOL has further explained that "[t]he rule is also applicable to work performed away from the premises or the job site, or even at home. *If the employer knows or has reason to believe that the work is being performed*, he must count the time as hours worked." 29 C.F.R. § 785.12 (emphasis added). We have summarized the rule:

> [W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [29 U.S.C. § 207].

19

*Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Connexx argues that since it had a procedure for its employees to report additional time, it is not responsible for compensating its employees for unreported time because it did not know the work was being performed. The district court did not reach this issue.

We decline to take up either issue. Both questions involve disputed factual questions that the district court should decide in the first instance on remand. We express no view on the merits of either issue.

## IV.   CONCLUSION

We reverse summary judgment on the FLSA claim and remand to the district court for consideration of whether time spent shutting down computers is compensable, whether the time spent booting up and down the computers is not compensable under the *de minimis* doctrine and whether Connexx had no knowledge of the alleged overtime such that it is not in violation of 29 U.S.C. § 207.

**REVERSED AND REMANDED.**