UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARIENE CADENA, et al., | Case No.: 2:18-cv-00233-APG-DJA |
| Plaintiffs | **Order** |
| v. | [ECF Nos. 77, 78, 79, 80, 91] |
| CUSTOMER CONNEXX LLC, et al., | |
| Defendants | |

Plaintiffs Cariene Cadena and Andrew Gonzales were hourly employees working at a call center for defendant Customer Connexx LLC (CC). CC is a wholly owned subsidiary of defendant JanOne Inc. The plaintiffs sue on behalf of themselves and similarly situated employees under 29 U.S.C. § 207 of the Fair Labor Standards Act (FLSA), claiming they were not paid for all overtime worked.[1] Specifically, they contend that they were not paid for time spent booting up their computers before clocking into a timekeeping program at the beginning of their shifts and for time spent powering down the computers after clocking out of the timekeeping program at the end of their shifts. They assert that the failure to account and pay for this time resulted in overtime violations under the FLSA.

This case was initiated in state court by former named plaintiff Danielle Curley. ECF No. 1-1. The defendants removed the case to this court. ECF No. 1. The plaintiffs thereafter amended the complaint to substitute Cadena and Gonzales as named plaintiffs because Curley

---

[1] The plaintiffs also brought claims under Nevada law, but I remanded those claims to state court. ECF No. 112 at 16-17. Those claims are no longer pending in this court, so I deny as moot the plaintiffs' motion to certify a class for those claims and the defendants' related motion to strike. ECF Nos. 77; 91.

had become unresponsive. ECF Nos. 32, 46.  The plaintiffs amended a second time to substitute original defendant ARCA, Inc. with JanOne. ECF Nos. 72, 86.

The FLSA collective action was conditionally certified and notice was sent to putative collective action members. ECF Nos. 28, 30.  Thereafter, consents to join the suit were filed by Amber Miller, Donna Alford, Marguerite Sigmon, Ariel Wilcox, Brandon Cadena, Clarrissa Dix, Nathan Schavers, Krystal Paynther, Kevin Kinyon, Judith Cummings, Kenya Mills, Dawn Pratt, Steve Somodi, Rossalind Saxton, Thomas Johnson, Diana Giraldo, Richard Ortiz, Mary Smith, and Danielle Curley. ECF Nos. 1-1 at 23; 35; 43; 49.  Ariel Wilcox subsequently withdrew her consent. ECF No. 61.  The claims of Thomas Johnson, Amber Miller, and Mary Smith were dismissed because they failed to respond to discovery. ECF No. 71.  As a result, there are 17 opt-in plaintiffs in this FLSA action.

I previously granted summary judgment in the defendants' favor, concluding that the time spent booting up and shutting down the computers was not compensable under the FLSA. ECF No. 112 at 16.  The Ninth Circuit reversed and remanded, concluding that the time spent turning on the computer and logging into the timekeeping program is compensable as integral and indispensable parts of the employees' principal job duties. ECF No. 121 at 19-20.  The Ninth Circuit held that "shutting down the computers is not integral and indispensable to the employees' ability to conduct calls, [so] it is not compensable under this theory." *Id.* at 15 n.4. But the Ninth Circuit stated that this time "may be compensable if the task is determined to be a principal activity in and of itself." *Id.*  The court remanded for me to "determine whether shutting down the computers is compensable under any circumstances." *Id.*  The court also remanded the issues of whether the time booting up and shutting down the computers is not compensable under

the *de minimis* doctrine or because the employer did not know of the alleged overtime, as CC argued both in its original motion for summary judgment and on appeal. *Id.* at 20-22.

On remand, I advised the parties that I would address their previously filed motions without the need for additional briefing. ECF No. 126.  Consequently, the following motions are presently before me: CC's motion to decertify the conditionally certified FLSA collective action (ECF No. 80); CC's motion for summary judgment (ECF No. 78), which JanOne Inc. joins; and JanOne's summary judgment motion (ECF No. 79).

The parties are familiar with the facts, so I repeat them here only where necessary to resolve the motions.  I grant CC's motion for summary judgment because no genuine dispute remains that the time spent to boot up and shut down the computers was either *de minimis* or, when not *de minimis*, was not done with the employer's knowledge of unpaid time because employees could and did notify CC of delayed logins or logouts, and the employees' time was adjusted accordingly.  I therefore deny as moot the motion to decertify and JanOne's summary judgment motion.

**I.  CC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 78)**

In its summary judgment motion, CC argues that the FLSA claim fails because the time booting up and shutting down is *de minimis* and because the defendants did not know about the alleged overtime if employees did not avail themselves of the means to correct inaccuracies in their time.[2]  The plaintiffs respond that the time it took to perform these tasks is not *de minimis*, and although employees were aware that they could alert supervisors about problems clocking in

---

[2] CC also asserts two arguments specific to individual plaintiffs.  CC contends that Cummings and Brandon Cadena are not due overtime because they worked less than 40 hours a week, so their FLSA claim for unpaid overtime fails.  CC also asserts that Kinyon should be judicially estopped from pursuing his claim because he failed to disclose it in his bankruptcy.  Given my rulings, I need not address these issues.

3

or out, they were unsure if the changes were made or if their pay was accurate. The plaintiffs also contend that instead of recording the time that the plaintiffs first started logging in, they or their supervisor would put their scheduled start time.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. County of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

CC had a policy of prohibiting off the clock work and it communicated that policy to its employees.[3] Employees were directed to log into the timekeeping system on the computer as their first task before logging into other programs needed to perform their work, and to close out all other programs before logging out of the timekeeping system at the end of their shifts.[4]

---

[3] *See, e.g.*, ECF Nos. 78-2 at 18; 78-3 at 5-6; 78-4 at 12; 78-7 at 6-7; 78-8 at 20-23.

[4] ECF Nos. 78-2 at 15, 21; 78-4 at 15-16, 19-20; 78-5 at 23; 78-7 at 6; 78-11 at 13; 78-13 at 5, 7; 78-16 at 19; 78-19 at 4, 7; 90-12 at 3.

4

Employees were able to access CC's building up to 30 minutes before their start time and they would badge in and out of the building. ECF Nos. 90-12 at 5; 103-15 at 9. Their pay was calculated off the time recorded in the timekeeping system on the computer, not the time from badge swipes in and out of the building.

The plaintiffs testified to varying times as to how long it took them to log into the timekeeping system at the beginning of their shifts, with times ranging anywhere from a few seconds to 20 minutes.[5] A number of factors influenced the amount of time it took to log in, but mostly it related to whether the computer was already on, was in sleep mode, or was turned off.[6] Whether the computer was an older model also impacted login times. ECF Nos. 78-18 at 15; 90-5 at 5; 103-17 at 3.

Logout times similarly varied, with most plaintiffs testifying that it took only a few seconds.[7] Some plaintiffs testified that they waited for the computer to completely power down

---

[5] ECF Nos. 78-2 at 11-12 (Curley testifying it regularly took 10 minutes to turn on); 78-3 at 12 (Cummings estimating it took five to 15 minutes for the computer to turn on and five minutes to load the timekeeping program); 78-4 at 16-20 (Alford testifying that if the computer was already on it would turn on instantly, if it was in sleep mode it would take two to three minutes, and if it was off it would take longer); 78-5 at 19 (Schavers estimating it took three minutes to boot up, sometimes longer if he needed to restart the computer); 78-12 at 3 (Giraldo testifying the boot up time varied from right away to up to 10 minutes); 78-13 at 8-11 (Saxton testifying that it took two to five minutes to boot up her computer and clock in); 78-15 at 6 (Brandon Cadena testifying that logging in took about one minute); 78-16 at 15-17 (Gonzales testifying that it took anywhere from less than a minute to 15 minutes to boot up); 78-17 at 9-10 (Ortiz testifying it took two or three minutes); 78-19 at 3-6 (Sigmon estimating one to two minutes from powering on to clocking in); 103-13 at 3 (Somodi testifying login could be momentary or up to ten minutes); 103-18 at 3 (Schavers testifying it took on average 10 to 15 minutes, sometimes 20 minutes).

[6] ECF Nos. 78-3 at 9; 78-4 at 16-20; 78-5 at 15; 78-11 at 3-4, 12; 78-14 at 11-12; 103-14 at 3-4; 103-17 at 3.

[7] *Compare* ECF Nos. 78-2 at 16; 78-3 at 15; 78-4 at 21, 23; 78-5 at 23-24; 78-15 at 9-10; 78-16; 78-17 at 11; 78-19 at 7; 101-4 at 5, *with* ECF Nos. 78-12 at 10 (Giraldo testifying she would shut down her computer and it took up to five minutes); 78-18 at 17 (one to four minutes); 103-7 at 5-6 (Cadena testifying she would shut down her computer and it took two to four minutes on the old computers and half that on the newer ones).

before leaving, so that took a bit longer. ECF Nos. 78-5 at 24; 78-12 at 10; 78-13 at 8.  Some plaintiffs testified they waited until it shut down because they were told to do so, others testified they did it as their own personal practice, while others testified they were not told to wait or chose not to wait after hitting the shutdown button.[8]

      CC had a means for employees to adjust their time to report off-the-clock work. Employees would fill out a "punch" form for supervisors to correct their time. *See, e.g.*, ECF Nos. 78-2 at 18-19; 78-10.  The plaintiffs testified they were aware of this procedure and many of them used it to report off-the-clock work when they could not log in quickly.[9]  A few employees testified that their time was adjusted to the time their shift was supposed to start rather than the time they started to log in.[10]  According to Ortiz, who was a supervisor, he would put the employee's scheduled time because the company had a policy of rounding time to the nearest quarter hour, so putting a time between one and six minutes before the scheduled start time would not matter. ECF No. 103-12 at 5-6; *see also* ECF No. 103-15 at 8 (CC's Rule 30(b)(6) witness testifying that CC paid by the quarter hour, not punch times).  Although some employees testified to this practice of putting the scheduled start time, punch forms and payroll records

---

[8] ECF Nos. 78-2 at 16; 78-3 at 15; 78-5 at 23-24; 78-11 at 3; 78-12 at 3; 78-13 at 8; 78-15 at 9-10; 78-16 at 20; 78-17 at 8; 78-18 at 14-15; 78-19.

[9] ECF Nos. 78-2 at 3, 10, 14, 18-19; 78-3 at 5, 16; 78-4 at 24, 27; 78-5 at 6-7; 78-11 at 14; 78-12 at 7-8; 78-13 at 14; 78-14 at 8; 78-15 at 12; 78-17 at 6-7.

[10] ECF Nos. 103-8 at 9 (Dix testifying that when she asked for corrections, the time entered was when she was scheduled to start, not when she actually started); 103-9 at 9 (Alford testifying similarly); 103-12 at 4-6 (Ortiz testifying similarly); 103-13 at 4 (Somodi testifying similarly); 103-14 at 3 (Pratt testifying similarly).  *See also* ECF No. 110-5 at 7 (Saxton testifying that she would use her start time rather than the time she started logging in, but no one told her to do that).

suggest it was not a uniform practice.[11]  All but two of the plaintiffs who used the punch form testified that their time was adjusted as requested or they did not know if it was adjusted.[12]

      CC's employees clocked into the timekeeping program before loading other computer programs that they used to perform their job duties and clocked out before shutting down the computer (if they did so).  Thus, the question here is whether the time CC employees spent (1) engaging the computer in some fashion, loading the timekeeping program, and clocking in and (2) shutting down the computer after logging out of the timekeeping program is non-compensable as *de minimis*.  If the time is not *de minimis*, then the parties also dispute whether CC knew its employees were spending more than *de minimis* time performing off-the-clock work and failed to compensate them for it.

      Under the *de minimis* doctrine, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946).  "Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards

---

[11] *See* ECF Nos. 110-2 (Dix's time records showing punches at times not exactly on the hour or half hour and adjustments with problems clocking in); 101-8 through 101-12 (punch claim forms for several plaintiffs showing times not exactly on the hour or half hour).

[12] ECF Nos. 78-2 at 24-25 (Curley testifying she was compensated for time reported on punch forms); 78-3 at 11 (Cummings testifying her time was fixed if she brought it to someone's attention); 78-5 at 12, 26 (Schavers testifying he knew of and used punch forms and was told his time would be adjusted but he did not double check to see if it was done); 78-11 at 14-15 (Dix testifying she knew she could use a punch form and the employer would adjust her time); 78-14 at 16-18 (Mills testifying she used the punch form when the computers were slow to load but she was not sure if her time was actually corrected); 78-15 at 12 (Brandon Cadena testifying his time was corrected if he informed his employer); 78-16 at 4-6, 22 (Gonzales testifying he reported the need to adjust his time but he was not sure if it was done); 103-11 at 12 (Saxton testifying that she used punch forms to adjust her time but did not check to see if time was adjusted).  *But see* ECF Nos. 78-20 at 3-4 (Paynther testifying that if she told her employer that her time needed to be corrected, she was told it would be adjusted); 90-14 at 6-7 (Paynther testifying it was not always corrected); 103-24 at 5-6 (Sigmon testifying that in at least one instance, she was not paid for time over 40 hours).

Act." *Id.* "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* The doctrine "is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (citing 29 C.F.R. § 785.47). The employer bears the burden of showing that the uncompensated time was *de minimis*. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057 n.10 (9th Cir. 2010).[13]

To determine "whether otherwise compensable time is *de minimis*," I consider "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d at 1063. There is no hard rule on what amount of time qualifies as *de minimis*, although "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id.* at 1062 (gathering cases); *see also Rutti*, 596 F.3d at 1057-59 (holding that employee filling out forms for "a minute or so" every morning was *de minimis*, but a daily task taking 15 minutes may not be).

---

[13] The Ninth Circuit's opinion in this case suggested that the Supreme Court recently "has questioned the application of the *de minimis* doctrine to the FLSA" because in *Sandifer v. U.S. Steel Corp.*, the Supreme Court stated that a "*de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles . . . ." 571 U.S. 220, 234 (2014); ECF No. 121 at 21. I disagree with this characterization of the quoted language. The Supreme Court was referring to 29 U.S.C. § 203(o), which allows parties to a collective bargaining agreement to decide whether "time spent changing clothes or washing at the beginning or end of each workday" is compensable. *Id.* at 226. It was this specific section that the Supreme Court concluded was all about trifles. Indeed, just before making the "trifles" statement, the Supreme Court distinguished § 203(o) from 29 U.S.C. § 207(a), which addresses "what preliminary activities had to be counted as part of the gross workweek." *Id.* at 233-34. The Court thus did not suggest that the *de minimis* doctrine does not or should not apply when considering compensable time under 29 U.S.C. § 207. Rather, it was tackling the difficult question of how to account for small amounts of time changing non-clothes items versus time spent changing clothes within § 203(o)'s meaning. Although the current Department of Labor regulation applies "a stricter *de minimis* standard than *Anderson* expressed," the regulation acknowledges the *de minimis* doctrine. *Id.* at 234 n.8; 29 C.F.R. § 785.47.

To the extent unrecorded time is not *de minimis*, the employer must compensate the employee "for all hours worked," including "[a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223(a). Thus, if "the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12. But if the employer "has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [29 U.S.C. § 207]." *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

CC necessarily knew that its employees were spending time every day engaging with the computer in some fashion before clocking in because the timekeeping system was on the computer. There are genuine issues as to whether CC also knew that its employees were spending time after they clocked out shutting down the computer. Several employees testified that they were instructed to shut down the computer at the end of their shifts, but not every employee was told this or complied with this instruction even if told. Viewing the evidence in the light most favorable to the plaintiffs, I assume for purposes of this order that it was an instruction and CC knew that its employees would have to push or click a button to shut down the computer after they had clocked out of the timekeeping program.

But no genuine dispute remains that the time spent turning on the computers and logging into the timekeeping system and shutting down the computers was *de minimis*, and where it was not *de minimis* the employees could and did request adjustments to claim the unrecorded time.[14]

---

[14] I therefore need not address whether turning off the computer at the end of the day is a principal activity.

9

Most employees testified it took mere seconds or a couple of minutes to turn the computer on and off, which is consistent with common sense that pushing or clicking a button or opening a computer program typically takes little time. *Lindow*, 738 F.2d at 1062 (stating that in determining whether time is *de minimis*, "common sense must be applied to the facts of each case"). The practical administrative difficulty of recording this time is obvious. Although the plaintiffs suggest CC should use the employees' badge swipes in and out of the building to capture this time, the time an employee badges into the building does not necessarily reflect the time the employee started working, as employees may have engaged in other activities like going to the breakroom. *See* ECF Nos. 78-11 at 5; 80-16 at 27 & n.70; *Lindow*, 738 F.2d at 1063-64 (concluding that the employer had no means of determining when pre-shift activity consisted of non-compensable activities such as socializing). And there is evidence that some employees swiped in and out of the building multiple times before or after the same shift, sometimes for unexplained lengthy periods of time. *See* ECF No. 80-16 at 27-30. Under the plaintiffs' proposal, the employer would have to investigate each instance where the badge swipes and timekeeping program varied by more than a minute or so to verify whether the time was spent on compensable activities. Cross referencing at least four badge swipes a day (in, out for lunch, back in after lunch, and out for the day) with the login times on the timekeeping system and investigating discrepancies is precisely the type of burdensome task the Ninth Circuit has concluded an employer need not undertake. *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1082 (9th Cir. 2016) (rejecting the argument that employer "could ascertain the exact log-in/out times by scouring its computer records" because "the *de minimis* doctrine is designed to allow employers to forego just such an arduous task" (emphasis omitted)).

The irregularity of the additional work also weighs against finding the time is more than *de minimis*. Although the employees had to turn the computers on and off every day, the occasions when logins or logouts took longer were irregular both in frequency and duration. Indeed, the employees' testimony about their experiences logging in and out is so varied as to nearly suggest that proceeding collectively under the FLSA is not warranted. The employees' estimates of the time they spent on these activities varied from seconds to 20 minutes and depended on multiple factors, including what shift the employee worked and whether the computer was already on, in sleep mode, off, or was an older model. *See Lindow*, 738 F.2d at 1063 (stating that "the uncertainty of how often employees performed the tasks and of how long a period was required for their performance are also relevant" to the *de minimis* inquiry). Finally, the aggregate amount of compensable time to turn a computer on and off each day even over the course of many months[15] for 17 employees is negligible.[16]

Where the time spent logging in or out took longer, and thus would not be *de minimis*, the employees could and did use punch forms or other means to request their supervisors to adjust their time, even for very small amounts of time. The employees testified that their time was adjusted, or they did not know whether it was.[17] The employees bear the burden of proving they

---

[15] *See, e.g.*, ECF No. 46 at 4 (alleging that Cariene Cadena was employed less than a year and Gonzales was employed for nearly two years).

[16] Some employees did not work eight hours a day or 40 hours a week and therefore a considerable portion of this time would not qualify as overtime. *See* ECF Nos. 78-3 at 7-8; 80-16 at 22-23, 63, 65, 73-92; 81-28 at 7 (the plaintiffs' expert evaluating Giraldo's pay records and, even considering rounding, finding no overtime violation for Giraldo).

[17] Only two employees, opt-in plaintiffs Paynther and Sigmon, testified that they did not believe their time was always corrected. Paynther and Sigmon's contention that their time was not adjusted as requested is not common to the collective action, so I dismiss those allegations without prejudice to Paynther and Sigmon suing on those claims individually in a separate action.

were "not properly compensated for work performed." *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998); *see also Rutti*, 596 F.3d at 1054. Where the employer's records are inaccurate or inadequate, the employee meets this burden if "he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (quotation omitted).[18] The plaintiffs have not shown they could meet this burden at trial. They have pointed to no evidence other than some of the employees' lack of knowledge about whether their time was changed to suggest that time was not adjusted when requested. The plaintiffs do not point to anything in their timeclock and punch claim records to support their claims, nor have they used those records to show even a single instance of a discrepancy between the employees' requested adjustment and the time recorded or how any such time would result in an overtime violation.[19]

Finally, as to the evidence that sometimes employees or supervisors adjusted time to reflect the scheduled start time rather than the time the employee started logging in, the plaintiffs have not pointed to sufficient evidence to conclude that the time was more than *de minimis* nor

---

[18] If the employee makes this showing, then the burden "shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate the reasonableness of the inference to be drawn from the employee's evidence." *Brock*, 790 F.2d at 1448 (quotation omitted). If the employer does not make this showing, then the court "may then award damages to the employee, even though the result be only approximate." *Id.* (quotation and emphasis omitted).

[19] Although I am not addressing the motion to strike the plaintiffs' expert, I note that the plaintiffs argue in their opposition to that motion that they had not received compete timekeeping and payroll data for all opt-in plaintiffs. ECF No. 105 at 13-14. Their opposition does not state for which opt-in plaintiffs the records are incomplete. In a joint status report, the parties previously had stated that the defendants had produced "approximately 5,800 pages of documents, as well as numerous excel files with time and pay data." ECF No. 63 at 3-4. Discovery was closed before the plaintiffs filed their opposition to the motion to strike. ECF No. 69. The plaintiffs did not file a motion to compel production of additional timekeeping or payroll records.

have they suggested any way to determine a reasonable estimate of the extent of such work as a matter of just and reasonable inference.  The plaintiffs do not point to evidence regarding how often this happened, to how many plaintiffs, for what amount of time, and whether that time would qualify as overtime.  This evidence appears to go to the plaintiffs' attempt to insert a rounding claim in this action, which I disallowed. ECF No. 112 at 3-7.  That decision was not appealed.

In sum, I grant CC's motion for summary judgment, which JanOne joined.  The plaintiffs have not raised a triable issue regarding whether the time they spent pre- and post-shift was more than *de minimis* or that when it was, their time was not adjusted as requested.  Additionally, even if CC's records are inaccurate or inadequate, the plaintiffs have not offered evidence sufficient to meet their initial burden of showing a means to determine non *de minimis* uncompensated time as a matter of just and reasonable inference.

## II.  CONCLUSION

I THEREFORE ORDER that defendant Customer Connexx LLC's motion for summary judgment **(ECF No. 78)** and defendant JanOne Inc.'s joinder **(ECF No. 79) are GRANTED as to the plaintiffs' overtime claims under the Fair Labor Standards Act**.  To the extent that opt-in plaintiffs Krystal Paynther and Marguerite Sigmon contend that their time was not adjusted as requested, those allegations are dismissed without prejudice to Paynther and Sigmon bringing those claims individually in a separate action.

I FURTHER ORDER that defendant Customer Connexx LLC's motion to decertify **(ECF No. 80),** the plaintiffs' motion to certify a class **(ECF No. 77)**, defendant JanOne's separate motion for summary judgment **(ECF No. 79)**, and the defendants' motion to strike **(ECF No. 91) are DENIED as moot**.

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants and against the plaintiffs.

DATED this 22nd day of May, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE